# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EILEEN D. MONTERO KIRKLAND,** ) <br> **Plaintiff,** ) <br> v. ) <br> ) <br> **NANCY BERRYHILL**[1]**, Acting** ) <br> **Commissioner of Social Security** ) <br> **Administration,** ) <br> **Defendant.** ) <br> _____ ) | **NO. EDCV 16-1688- KS** <br><br> **MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

Eileen D. Montero Kirkland ("Plaintiff") filed a Complaint on August 4, 2016, seeking review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant") denying her application for Disability Insurance Benefits. On August 26, 2016, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 9,

---

[1] The Court notes that Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Nancy A. Berryhill for Carolyn Colvin as the defendant in this action.

1

11.) On March 17, 2017, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No. 16.) Plaintiff seeks an order reversing the Commissioner's decision and remanding for an immediate award of benefits. (Joint Stip. at 26-27.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded for further administrative proceedings. (*See id*. at 27-28.). The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On May 4, 2012, Plaintiff protectively filed an application for Title II Disability Insurance Benefits ("DIB"). (Administrative Record ("A.R.") 217.) Plaintiff alleged a disability commencing February 1, 2011, due to systemic lupus, depression, chronic fatigue, Sjogren's syndrome, right paralyzed diaphragm, and osteopenia. (AR 75.) Plaintiff previously worked as an ultrasound technician. (AR 222.) The Commissioner initially denied Plaintiff's application on October 17, 2012, and upon reconsideration on April 18, 2013. (AR 102-07, 109-14). On June 12, 2013, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 115-16.) Plaintiff, who was represented by counsel, testified before ALJ Mark Greenberg on September 22, 2014 (the "ALJ Hearing"). (AR 44-74.) Vocational expert, Dr. Alan Cummings, ("VE") also testified at the ALJ Hearing. (*Id.*) On November 19, 2014, the ALJ issued a decision denying disability insurance benefits. (AR 16-36.) Plaintiff filed a request for review of the ALJ's unfavorable decision on January 16, 2015, which the Appeals Council denied on June 1, 2016. (AR 1-7.) Plaintiff filed the instant action on August 4, 2016.

\\
\\
\\
\\
\\

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015. (AR 21; *see also* AR 217.) The ALJ then employed the five-step sequential evaluation process and concluded that Plaintiff was not under a disability within the meaning of the Social Security Act from her disability onset date of February 1, 2011, through the date of the decision, November 19, 2014. (AR 21-30.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2011, the alleged onset date. (AR 21.) At step two, The ALJ found that Plaintiff "has the following severe impairments: systemic lupus erythematosus" ("SLE" or "Lupus").[2] (*Id.*)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (AR 24.) The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c). (*Id.*)

At step four, the ALJ determined that Plaintiff was capable of preforming her past relevant work as an ultrasound technician because the work does not require any activities precluded by Plaintiff's RFC. (AR 28.) Further, the ALJ observed that even though Plaintiff is "capable of performing past relevant work, there are other jobs existing in the national economy that she is also able to perform." (AR 29.) Therefore, the ALJ made an alternate step five finding. Specifically, the ALJ found that even if Plaintiff was restricted to light work with additional limitations, according to the VE's testimony, Plaintiff was

---

[2] Plaintiff does not challenge the ALJ's step-two findings that Plaintiff's depression is "nonsevere."

cable of performing jobs that exist in significant numbers in the national economy, including the representative occupations of order clerk (DOT 209.567-014), inspector (DOT 669.687-014), and stuffer (DOT 731.685-014). (AR 29-30). Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset date through the date of the ALJ's decision. (AR 30.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

Plaintiff raises two issues. First, Plaintiff contends that the ALJ erred in giving greatest weight to the opinions of the consultative examiner and State agency consultants, and least weight to Plaintiff's treating physician, thereby resulting in an incomplete hypothetical to the VE. (Joint Stip. 4-9.) Second, Plaintiff contends that the ALJ improperly found Plaintiff's testimony less than fully credible. (*Id.* at 16-19).

Because the ALJ relied in part on Plaintiff's testimony when giving weight to the medical opinions, the Court will discuss the issue of Plaintiff's credibility first.

### I. **The ALJ Failed To Provide Clear And Convincing Reasons Supported By Substantial Evidence For Finding Plaintiff's Testimony Less Than Fully Credible**

#### A. **Factual Background**

Plaintiff provided information about her symptoms and limitations in an Adult Function Report dated August 9, 2012, and during her testimony at the ALJ Hearing on September 22, 2014. (AR 44-74, 246-57.) In the Adult Function Report, Plaintiff indicated that she cares for her children, then-ages 15 and 8 years old. (AR 247.) However, she also

indicated that her children "can take care of themselves for the most part." (*Id.*). In the mornings, Plaintiff wakes up at 7:00 a.m. and sends her children off to school. (*Id.*) Immediately after, Plaintiff lays back down to rest for about an hour or two and wakes back up around 9:30 a.m. (AR 59-60, 247.) After lunch, she takes a one to two hour nap. (AR 247.) In the afternoon, Plaintiff will pick up her child from school. (AR 60.). Plaintiff ensures that her children complete their homework and that her youngest child takes a bath and goes to bed on time. (AR 247.) Plaintiff's oldest child is diagnosed with diabetes, but he is generally self-sufficient. (AR 60-61). There are days where Plaintiff is unable to perform these activities. (AR 60). On such days when Plaintiff needs to rest, Plaintiff gets help from her husband, her sister-in-law, and her oldest son. (AR 57, 60-61.)

Plaintiff indicates that she is limited in her ability to perform household chores. Plaintiff straightens up around the house but struggles to walk from room to room (AR 247) and is limited to doing the lighter chores (AR 61). Plaintiff will try to do the dishes, dusting, cleanup, and laundry. (AR 61, 249.) However, she completes these tasks in 15-20 minute increments and takes breaks between that last about 15-20 minutes each. (AR 61-62.) Plaintiff has trouble with the heavier chores, such as cleaning the bathrooms, mopping, sweeping, and the yard work. (AR 61, 250.) She also has trouble lifting the laundry and relies on family members to lift and carry the clothes. (AR 63, 250.) Plaintiff's oldest son and her husband help out with the heavier chores and even the lighter chores when Plaintiff has difficulty completing them. (AR 61, 250.)

Plaintiff also indicated that she has difficulty preparing meals, she will "start dinner earlier now so [she] can take more rest breaks while preparing meals." (AR 247.) Plaintiff indicates that the walking, standing, bending, and carrying involved with preparing meals limits her to making only simple meals, "such as sandwiches, baked meals, salads, microwavable meals and leftovers." (AR 247, 249.)

Additionally, Plaintiff contends that she has difficulties when grocery shopping. She goes to the grocery store about twice a month for about 45 minutes at a time. (AR 251.) She leans against the cart when walking to balance herself and has issues bending down to get items. (*Id.*) Plaintiff requires rest breaks while walking through the store. (*Id.*) Plaintiff will carry some of the lighter groceries, up to about 10 pounds, but relies on others to carry most of the bags. (AR 63, 251.)

Plaintiff testified that she can walk for about 20 minutes and stand for about 20-30 minutes, but finds it difficult to perform simple physical activities such as standing, sitting and walking for an extended period of time, lifting, and squatting. (AR 63.) To avoid standing for extended periods of time, she sits down when folding laundry and shaving her legs, and also has her son complete the dishes when she has difficulty standing. (AR 248-50.) To avoid bending, she lets the "soapy water run down [her] legs" while showering and sits down when getting dressed. (AR 248.) Plaintiff has to switch positions frequently when driving or riding in a car, or when watching TV. (AR 251-52.) After sitting for 30 minutes to an hour, she would need to shift around and "rub [her] muscles a bit." (AR 62.)

At the ALJ hearing, Plaintiff testified that she worked as an ultrasound technician for 17 years with the same employer until she "volunteered" to be laid off in June 2010 following business-related lay-offs in the company. (AR 48-49). Plaintiff was diagnosed with lupus more than 25 years ago, and worked throughout the time she had the lupus. (AR 49-50.) Plaintiff testified that due to her physical impairment, she was limited to working part-time hours. (AR 49.) Plaintiff stated that her physical condition results in chronic fatigue, which affected her work performance. (AR 50.) She indicated that her fatigue is an everyday occurrence, but the severity fluctuates unpredictably. (AR 51.) While working, Plaintiff was hospitalized several times and had several flare ups. (AR 57.) When she was not feeling well, Plaintiff was allowed to rest between patients, which meant nodding off for a little bit in a dark isolated room, or lying down on the patient beds. (AR 57-58.) At

times, when Plaintiff felt "really, really ill" she would go to her car to rest without her employer knowing. (AR 58.) Plaintiff testified that her work suffered because of her condition, which caused her to be late. (AR 58-59.)

Plaintiff testified that her physical symptoms have gotten worse since her last flare up in February 2011 when she had to be treated at St. Joseph's Hospital in Orange. (AR 50.) Plaintiff attempted to find work that would allow for her physical needs, where she could rest, but was unable to find anything. (AR 66.)

**B.     Legal Standard**

When assessing a claimant's credibility, the ALJ must engage in a two-step analysis. *Trevizo v. Berryhill*, 862 F.3d 987, 1000 (9th Cir. 2017) (citing *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. *Id.* "If such evidence exists and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so," and those reasons must be supported by substantial evidence in the record. *Id.*.

In weighing a plaintiff's credibility, the ALJ may consider many factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony ... that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). However, "subjective pain testimony cannot be rejected on the *sole* ground that it is not fully

corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added) (citation omitted).

The ALJ must also "specifically identify the testimony [from the claimant that] she or he finds not to be credible and ... explain what evidence undermines the testimony." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). "General findings are insufficient." *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

**C. Discussion**

The ALJ failed to provide clear and convincing reasons supported by substantial evidence to discredit Plaintiff's subjective testimony about her symptoms and physical limitations. The ALJ provided four reasons for rejecting Plaintiff's testimony. First, the ALJ found that Plaintiff's ability to perform some of her daily activities "diminishes the credibility of her allegations of functional limitations." (AR 24.) Specifically, Plaintiff's daily activities include, driving, shopping, taking her children to and from school, doing some household chores, preparing simple meals, washing dishes, and spending time with others. (*Id.*) The ALJ held that some of the abilities required to perform these activities are necessary for obtaining and maintaining employment. (*Id.*) However, this reason is insufficient because it is not supported by substantial evidence.

Although Plaintiff testified that she performs these activities, it is not without great difficulty. For instance, it takes Plaintiff only about 10-15 minutes to drop off her children at school, but right after she does so, her fatigue requires her to take a nap for about an hour or two. (AR 59-60.) When grocery shopping, she leans against the cart to balance herself, takes rest breaks while shopping, and requires assistance with carrying the groceries. (AR

63, 251.) Plaintiff also has difficulty performing household chores. She has trouble walking from room to room and is limited to doing lighter chores such as dusting, washing dishes, and laundry. (AR 61, 247.) Even then, Plaintiff performs these activities in 15-20 minutes increments and requires the assistance of family members to carry the laundry completing the lighter chores when she becomes fatigued. (AR 61-63, 250.) With regard to preparing meals, Plaintiff testified that due to constant fatigue, she only prepares simple meals such as "sandwiches, baked meals, salads, microwavable meals and leftovers." (AR 249.) When preparing dinner, she starts early so that she can take rest breaks while preparing the meals. (AR 247.)

Second, the ALJ reasoned that because Plaintiff was diagnosed with SLE while working, the fact that the impairment did not prevent her from working "strongly suggests that it would not currently prevent work." (AR 26.) Third, the ALJ noted that Plaintiff volunteered to be laid off and did not lose her job because of her disability. However, these two reasons are not sufficient because they are not supported by substantial evidence. First, Plaintiff does not allege that she was disabled while she was working. Plaintiff specifically indicated her conditioned worsened after a flare up in February 2011, about 8 months after she left her job in June 2010. (AR 48-50.) Further, Plaintiff testified that her condition limited her ability to perform her job; she could only work part-time and required multiple rest breaks while working. (AR 49, 57-58.)

When she was not feeling well, Plaintiff took rest breaks between patients, which meant nodding off for a little bit in a dark isolated room, or laying down on the patient beds. (AR 57-58.) At times, when Plaintiff felt "really, really ill" she would go to her car to rest without her employer knowing. (AR 58.) Plaintiff also testified that her work suffered because of her condition, which caused her to be late. (AR 58-59.) Plaintiff, after leaving her prior employment, sought a job where she would be able to rest, but was not able to find anything. (AR 66.)

Fourth, the ALJ discounted Plaintiff's testimony because it was not supported by the medical evidence. (AR 26). However, "subjective pain testimony cannot be rejected on the *sole* ground that it is not fully corroborated by objective medical evidence." *Rollins*, 261 F.3d at 857 (emphasis added) (citation omitted). Thus, even if the Court assumes *arguendo* that the objective medical evidence is insufficient to support Plaintiff's description of her symptoms and limitations, this, alone, is not a legally sufficient basis for the ALJ's adverse credibility determination. On remand, the ALJ must revisit his adverse credibility determination and either find that Plaintiff's allegations are credible or articulate specific, clear, and convincing reasons supported by substantial evidence in the record for discounting a specified portion of her complaints.

## II. The ALJ Erred in Favoring the Opinion of the Consulting Examiner and the State Agency Consultants Opinions Over Those of the Treating Physicians

Plaintiff also argues that the ALJ erred in giving great weight to the opinion of the Consultative examiner and the State agency consultants, while giving little weight to Plaintiff's treating physician, Dr. Shah. (Joint Stip. 4-9.) For the reasons stated below, the Court agrees with Plaintiff.

### A. Factual Background

Plaintiff alleges that she was diagnosed with stomach lupus at the age of 25. (AR 49.) Plaintiff testified that her chief complaint is that the lupus causes fatigue, which prevents her from working. (AR 50).

//
//
//
//

### 1. Medical Opinion of Treating Physicians

Plaintiff visited various doctors for her lupus and fatigue. Dr. Mahesh G. Shah has treated Plaintiff "since 1993." (AR 540.) The medical record provides Dr. Shah's treatment notes between February 2010 and February 2014. During that time, Plaintiff visited Dr. Shah on multiple occasions complaining of her lupus and fatigue. In each visit, Dr. Shah noted that Plaintiff appeared fatigued and ill, although on multiple occasions he noted that Plaintiff did not appear in acute distress. (AR 359, 362, 364, 367, 369, 372, 374, 463, 516, 520, 545.) In a letter dated August 22, 2014, Dr. Shah opined that Plaintiff is "totally disabled in various aspects which include physical and mental conditions" "resulting in inability to continue working." (AR 540-41.)

Plaintiff visited two other doctors for her fatigue. Between February 8, 2013 and September 5, 2014, Plaintiff visited rheumatologist Dr. Thomas Powell. (AR 467-86, 494-97.) The treatment notes indicate that Plaintiff complained of fatigue during her visits. (*See id.*) Additionally, Dr. Mahesh Shah referred Plaintiff to Dr. Priya Khanijou Shah for evaluation of Plaintiff's symptoms of fatigue. (AR 512.) Dr. Priya Shah examined Plaintiff on July 11, 2011. Treatment notes indicate that Plaintiff reported to Dr. Priya Shah that she was hospitalized in March 2011 for a lupus flare up and is experiencing "significant fatigue." (*Id.*) Plaintiff reported that she experienced these symptoms prior to the flare up but that her muscles now felt more fatigued than previously. (*Id.*) At the ALJ Hearing, Plaintiff testified that her symptoms have gotten worse since the February 2011 flare up. (AR 50.) Dr. Shah observed that Plaintiff was "alert, oriented and in no acute distress." (AR 513.) Dr. Shah concluded that Plaintiff suffers from fatigue which is likely a result from Plaintiff's medication, Prednisone. (AR 511-13.)

//
//
//

2.  *Medical Opinion of Consultative Examiner*

At the request of the Commissioner, consultative examiner Dr. Aida Cruz, performed a complete internal medicine evaluation of Plaintiff on September 4, 2012. (AR 421-29.) Plaintiff's chief complaint was SLE. (AR 421.) Plaintiff reported that she was diagnosed about 20 years ago and has been treated with multiple medications. (*Id.*) Plaintiff also reported that, because of her SLE, she suffers from chronic fatigue. (AR 422.) Finally, Plaintiff indicated that she has flare ups. (*Id.*) Dr. Cruz observed that Plaintiff "arrived for the appointment on time and was able to drive to the office." (AR 421.) Plaintiff appeared "well-developed, well-nourished and in no acute distress." (AR 423.) Plaintiff was able to get on and off the examining table without difficulty. (*Id.*) Dr. Cruz noted that Plaintiff had a full range of motion of all joints, her vital organs were normal, there was no evidence of nephropathy, and her extremities had normal function. (AR 423-25.)

Based on the examination, Dr. Cruz diagnosed Plaintiff with SLE. (AR 425.) Further, Dr. Cruz opined that Plaintiff is capable of performing full range of medium work including carrying and lifting 50 pounds occasionally and 25 pounds frequently, and standing, walking, and sitting for 6 hours in an 8 hour day. (AR 426.) However, even though the ALJ identified Plaintiff's SLE as a "severe impairment" (*see* AR 21), Dr. Cruz's treatment notes do not mention an evaluation of Plaintiff's fatigue as a symptom flowing from the SLE.

3.  *Non-examining Physicians' Opinions*

On October 17, 2012, State agency non-examining medical consultant, J. Ha (the "Consultant"), reviewed Plaintiff's medical records on the initial level. (AR 75-85.) Dr. Ha determined that Plaintiff was not disabled. (AR 84). Dr. Ha found that Plaintiff has a medically determinable impairment due to her SLE and that it could reasonably be expected

to produce Plaintiff's pain or other symptoms. (AR 82.) However, Dr. Ha opined that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of the symptoms is not substantiated by objective medical evidence. (*Id.*). In reaching this conclusion, Dr. Ha relied on Plaintiff's daily activities and her treatment plans for her symptoms. (*Id.*). In particular, Dr. Ha found Plaintiff partially credible because she engaged in daily activities such as "taking care of children, taking care of personal needs, preparing simple meals, light household chores, driving a car, shopping a [sic] stores, and walking about 20 minutes." (*Id.*).

Dr. Ha opined that Plaintiff can lift and carry 50 pounds occasionally and 25 pounds frequently. (AR 83). Further, Plaintiff can stand, walk, or sit for 6 hours in an 8-hour day. (*Id.*) Dr. Ha concluded that although Plaintiff's "condition results in some limitations in [her] ability to perform work related activities," she had the RFC to perform her past relevant work as an ultrasound technician. (AR 84).

V. Ramirez, the State agency non-examining medical consultant on reconsideration, found Plaintiff "not disabled" on April 18, 2013. (AR 97.) The reconsideration analysis specifically notes that Plaintiff's exams indicated that her back, extremities, hands, and knees, gait, and motor strength were normal. (AR 93.) Plaintiff provided additional medical records for review, but the consultant on reconsideration found that there were "no signs of any worsening" and thus affirmed the initial decision. (*Id.*).

**B.   Legal Standard**

An ALJ must consider all of the medical opinions in the claimant's case file. 20 C.F.R. §§ 404.1527(b), (c). The ALJ may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records

while ignoring others); *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) ("[T]he [ALJ]'s decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'") (citing *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)); *see also Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports."); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (finding error for an ALJ to ignore competent evidence in the record in order to justify his conclusion); *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted).

Further, the ALJ must generally give more weight to opinions of treating physicians, "since these sources are likely the medical professionals most able to provide a detailed longitudinal picture of your medical impairments(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings along or from reports of individual examinations, such as consultative examinations[.]" 20 C.F.R. § 404.1527(c) (2); *see also*, *Orn v. Astrue*, 495 F.3d at 631. "To reject the uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Trevizo*, 862 F.3d at 997 (internal quotation marks and citation omitted); *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo*, 862 F.3d at 997. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

15

### C. Discussion

Here, the ALJ has not articulated clear and convincing reasons supported by substantial evidence in the record for choosing not to assign controlling weight to Dr. Shah's opinions as Plaintiff's treating physician. First, Dr. Shah's opinions regarding Plaintiff's fatigue were not controverted or even addressed by the State agency consultants and consultative examiner. Second, the reasons the ALJ provided for assigning little weight to Dr. Shah's opinion were insufficient.

First, the ALJ concluded that Plaintiff was not disabled by selectively focusing on the opinions of consulting internal medicine examiner, Dr. Aida Cruz, who completed a consultative examination of Plaintiff on September 4, 2012. (AR 27, 421-29.) Dr. Cruz examined Plaintiff on a single occasion and after completing a physical examination of Plaintiff, concluded that Plaintiff had SLE. (*Id.*) The exam entailed testing Plaintiff's vital signs, physical appearance, and range of motion. However, Plaintiff repeatedly indicated that she is prevented from working because of the fatigue she suffers from the SLE. (*See* AR 16). Dr. Cruz did not address or examine Plaintiff for limitations resulting from fatigue.

The ALJ also gave great weight to the opinions of the State agency medical consultants. (AR 27, 75-85, 87-98.) The State agency consultants reviewed Plaintiff's medical records and concluded that she is capable of performing medium work. (AR 83-84, 96-97.) At the reconsideration level, the State agency medical consultant found that Plaintiff's back, extremities, hands, knees, motor strength, and gait were all normal. (AR 93.) Like the consultative examiner, the State agency consultant failed to acknowledge Plaintiff's fatigue.

Consequently, Dr. Shah's opinions regarding Plaintiff's fatigue are not controverted by the consulting examiner or the State agency consultants. Rather, his opinions and

treating notes regarding Plaintiff's fatigue, are simply not taken into account at all. Regardless, he ALJ afforded "little weight" to his conclusion that Plaintiff is "totally disabled." As stated above, Dr. Mahesh Shah has treated Plaintiff since 1993. The record itself provides treatment records between February 2010 and February 2014. In the treatment notes, Dr. Shah repeatedly noted that Plaintiff appeared fatigued and mildly ill. (*See* AR 359, 362, 364, 367, 369, 372, 374, 463, 516, 520, 545.) This observation is further confirmed by the opinions and treatments of Plaintiff's other treating physicians Dr. Powell and Dr. Priya Shah. (*See* AR 467-86, 494-97, 512.)

Second, the ALJ erred because the reasons he provided for not giving greater weight to Dr. Shah's opinion are not sufficient. In his one-paragraph discussion of Dr. Shah's medical opinion the ALJ provided four reasons for not giving controlling weight to the treating physician's opinion. First, the ALJ simply stated that the opinion was "brief, conclusory, and inadequately supported by clinical findings." (*Id.*). However, Dr. Shah has been treating Plaintiff since 1993 until at least 2014, a span of about 21 years. The treatment notes reflect Plaintiff visited Dr. Shah at least ten times between 2010 and 2014, with the large majority of visits taking place in 2011. Therefore, Dr. Shah's opinion is based on extensive examination of Plaintiff over a long period of time.

The second reason the ALJ provided for discounting Dr. Shah's opinion is that Dr. Shah's opinion is inconsistent with "records reflecting that the claimant's musculoskeletal examination was negative." (AR 28.) This reason is not supported by substantial evidence. The ALJ rejects Dr. Shah's opinion based on years of treating Plaintiff by selectively citing to a single examination by Dr. Powell in the record that reflects a negative musculoskeletal exam. (AR 467.)

Third, the ALJ reasoned that Dr. Shah's opinion is inconsistent with Plaintiff's "ability to perform activities of daily living, such as driving, shopping, taking her children

to and from school, spending time with others, preparing simple meals, and doing light household chores." (AR 28.) As discussed above, the record reflects that Plaintiff has difficulty performing these daily activities. (*See e.g.*, AR 49, 55-56, 59-63.) The ALJ selectively relied on parts of Plaintiff's testimony and not others. Therefore, this reason is insufficient as it is not supported by substantial evidence.

Lastly, the ALJ stated that Plaintiff appears to be "responding well to medication adjustments in the most recent medical evidence." (AR 28.) However, this reason is again not supported by substantial evidence. The ALJ does not cite to any evidence when making this assertion. Earlier in his analysis, the ALJ indicates that Plaintiff asked for Symbicort as it was working well for her. (AR 27.) However, Symbicort is used to prevent "difficulty breathing, chest tightness, wheezing, and coughing caused by asthma."[3] As stated, Plaintiff testified that she is prevented from working because of her fatigue. The Court can find no evidence in the record suggesting that Plaintiff's fatigue is responding well to her medication. In fact, Dr. Priya Shah's treatment notes indicate exactly the opposite, noting that Plaintiff's fatigue may be caused because of her lupus medication. (AR 511).

Accordingly, because the ALJ, failed to give proper weight to the opinions of the treating physician and selectively relied on only certain portions of the medical evidence, the Court cannot find that substantial evidence supports the ALJ's conclusions. *See Robinson*, 366 F.3d at 1083; *see also Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (even where a treating physician's opinion is contradicted by another doctor's opinion, it is still owed deference and will often be "entitled to the greatest weight . . . even if it does not meet the test for controlling weight.").

---

[3] *See* https://medlineplus.gov/druginfo/meds/a699056.html

Because the Court remands on the grounds described above, the Court declines to reach Plaintiff's contention that the ALJ presented an incomplete hypothetical to the VE.

### III. Remand Is Warranted

In light of the ALJ's error, this matter must be remanded. The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Under the credit-as-true rule, a district court should remand for an award of benefits when the following three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. The third of these conditions "incorporates . . . a distinct requirement of the credit-as-true rule, namely that there are no outstanding issues that must be resolved before a determination of disability can be made." *Id.* n.26; *see also Harman*, 211 F.3d at 1179-81 (where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate).

Here, it is yet unclear whether proper consideration and characterization of all the available medical evidence would lead to a disability finding. For this reason, the Court finds there are outstanding issues that must be resolved before a determination of disability can be made. Accordingly, the Court remands for further development of the record, including the proper consideration of the available medical records and Plaintiff's testimony. *Cf. Garrison*, 759 F.3d at 1021 (where "an evaluation of the record as a whole

creates serious doubt that a claimant is, in fact, disabled," the court retains flexibility to remand for further proceedings even though all conditions of the credit-as-true rule are satisfied); *see also Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003).

**CONCLUSION**

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: August 14, 2017

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE